UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID MICHAEL SCHIMPF,

    Plaintiff,

v.                                                 Case No. 19-C-1825

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

---

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

---

Plaintiff David Schimpf filed this action for judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Schimpf asserts that the case requires remand because the administrative law judge (ALJ) erred by (1) rejecting the neuropsychiatrist's opinion without good reasons and (2) failing to consider Schimpf's work history in his credibility assessment. For the reasons that follow, the Commissioner's decision is affirmed.

## BACKGROUND

Schimpf filed his application for a period of disability and disability insurance benefits on August 22, 2016, alleging disability beginning May 7, 2016, at which time he was 57 years old. R. 175–76. He listed left frontal lobe epilepsy, major depressive disorder, and recurrent, nonpsychotic, generalized anxiety disorder as the conditions that limited his ability to work. R. 475. After his application was denied initially and upon reconsideration, he requested a hearing before an ALJ. R. 13. On December 6, 2018, ALJ William Shenkenberg held a hearing at which

Schimpf, represented by counsel, Schimpf's wife, Patricia Miller-Schimpf, and a vocational expert (VE) testified. *Id*.

At the time of the hearing, Schimpf was 60 years old and living with his wife in Oshkosh, Wisconsin. R. 37. He had an undergraduate degree from Macalester College in St. Paul, Minnesota, and a Ph.D. in religious studies from Marquette University. R. 37–38. Up until his disability, Schimpf was employed as an associate professor of theology and religious studies and directed a theater program at Marian University. R. 48. He stated that during his last year of teaching, he experienced a lot of fatigue and that he scheduled breaks in between classes so that he could nap. R. 51. He also stated that he was having problems with memory and forgetfulness, failing to prepare for class and grade papers. R. 51–52. Schimpf testified that, after he stopped teaching, he was initially on short-term, and then, later, long-term disability through Marian. R. 51.

Schimpf testified about his depression symptoms, generalized anxiety, and epilepsy. R. 43–47. He described having seizures, mostly at night, that he has also recently begun having during the day. R. 44. He testified that he knows he had a seizure if he wakes up sick to his stomach, dizzy, and unstable, with ringing in his ears and a bitter taste in his mouth. R. 45. He stated that the symptoms usually last a day to a day-and-a-half after a seizure. *Id*. Schimpf described his daytime seizures as producing similar symptoms, in addition to the sensation of feeling as though his "brain is falling apart." R. 46. Schimpf testified that he has never lost his driving privileges and still drives, but he does not drive if he feels sleepy or he feels that he should not be driving. R. 52. He spends his day helping his wife with her at home childcare business by holding babies occasionally and reading on his computer or phone. R. 53–54. He testified that before he quit working, he used to go to the library to do research and wrote papers on religion

2

and popular culture, but he is no longer able to do that because of his forgetfulness and fatigue. R. 55.

Patricia Miller-Schimpf then testified about her husband's current behavior and abilities. R. 58–63. Miller-Schimpf testified that her husband was now very slow and clumsy, unable to connect the dots and figure things out. R. 58. She described his inability to remember what he is doing, such as feeding a baby even when it is crying, as well as his lack of inhibition and corresponding inappropriate behavior around others, such as scratching his genitals and picking his nose publicly. R. 59–60. She stated that he sometimes acts completely appropriately in public but is unaware of when he does not. R. 60. She also described how sometimes when he is driving, he will pull over and fall asleep very quickly, and that she does not let him drive when he has pre-seizure symptoms because of this tendency. R. 60–61. Finally, she testified about his absentmindedness—such as his inability to remember how to make a rectangle out of wood despite being a skilled carpenter or how to make macaroni and cheese—and his clumsiness, including his propensity for falling. R. 61–62. She concluded her testimony by stating that she did not believe he could live independently. R. 63.

In a fourteen-page decision dated February 26, 2019, the ALJ concluded that Schimpf was not disabled from May 7, 2017, through the date of his decision. R. 13–26. The ALJ followed the five-step sequential process for determining disability prescribed by the Social Security Administration (SSA). R. 14. At step one, the ALJ determined that Schimpf met the insured status requirements of the Social Security Act through December 31, 2021, and that he had not engaged in substantial gainful activity since May 7, 2016, the alleged onset date. R. 15. At step two, the ALJ determined that Schimpf had the following severe impairments: epilepsy, post-concussion syndrome, and a depressive disorder. *Id*. At step three, the ALJ concluded that Schimpf did not

3

have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

The ALJ then assessed Schimpf's RFC, finding that Schimpf could work at all exertional levels with some non-exertional limitations:

> he can tolerate only occasional exposure to hazards, such as moving machinery and unprotected heights. Mentally, he is able to understand, remember and carry out simple instructions and perform simple routine tasks in a low stress environment with only occasional changes in the work environment. He is capable of maintaining concentration, persistence and pace for simple tasks in two-hour increments.

R. 18. At step four, the ALJ determined that Schimpf could not perform any past relevant work as an associate professor. R. 24.

At step five, the ALJ concluded that, based upon the VE's testimony and considering Schimpf's age, education, work experience, and RFC, Schimpf was capable of successfully adjusting to other work that exists in significant numbers in the national economy under 20 C.F.R. §§ 404.1569 and 404.1569a. R. 25. Based on that finding, the ALJ found that Schimpf was not disabled. *Id*. The Appeals Counsel declined to review the ALJ's decision, making that decision the final decision of the Commissioner of Social Security. R. 1.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the SSA at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national

4

economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of Social Security. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof; a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence that the claimant is able to work. Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

5

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

# ANALYSIS

**A. Assessment of Medical Opinions**

Schimpf first contends that the ALJ erred by not giving controlling weight to the opinion of treating neuropsychologist Gerald Bannasch. Generally, the ALJ must give "controlling weight" to the medical opinions of a treating physician on the nature and severity of an impairment if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with other substantial evidence." *Burmester*, 920 F.3d at 512; 20 C.F.R. § 416.927(c)(2); SSR 96-2p. If the ALJ decides to give lesser weight to a treating physician's opinion, he must articulate "good reasons" for doing so. *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). Stated differently, although an ALJ is not required to give the treating physician's opinion controlling weight, he is still required to provide a "sound explanation for his decision to reject it." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "If the ALJ does not give the treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Dr. Bannasch completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) in October 2018. R. 644–46. In the form, Dr. Bannasch checked boxes indicating that Schimpf had moderate limitations in his ability to interact appropriately with the public, supervisors, and co-workers. He also checked boxes indicating that Schimpf had marked limitations in his ability to understand and remember simple instructions, carry out simple instructions, make judgments on simple work-related decisions, and respond appropriately to usual work situations and to changes in a routine work setting. Dr. Bannasch checked boxes indicating

Schimpf had extreme limitations in his ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. R. 644–45. In a form entitled "Seizures," Dr. Bannasch noted that Schimpf suffers from minor motor seizures that occur more than once weekly. R. 647. He also checked a box indicating that, during the seizures, Schimpf experiences alteration of awareness or loss of consciousness. *Id.* Dr. Bannasch also completed a physical capacities evaluation. R. 648–50. In the form, Dr. Bannasch opined that Schimpf could sit, stand, and walk eight hours a day; grasp, push, pull, and perform fine manipulations with both hands; and could use both feet to operate foot controls. R. 648. He checked boxes noting that Schimpf could frequently lift 11 to 20 pounds; occasionally lift 21 to 50 pounds; frequently carry 5 to 10 pounds; occasionally carry 11 to 20 pounds; continuously bend, squat, crawl, and reach above shoulder level; and never climb. R. 649. He also checked boxes indicating that Schimpf had mild restriction of activities involving exposure to marked changes in temperature and humidity and exposure to dust, fumes, and gasses as well as total restriction of activities involving unprotected heights, being around moving machinery, and driving automotive equipment. R. 650.

In a letter to Schimpf's attorney dated October 23, 2018, Dr. Bannasch noted that Schimpf had abnormal neuropsychological testing results, showing frontal lobe dysfunction. R. 651–52. He reported that Schimpf has problems with sequencing and working memory and that he becomes easily distracted and confused. Dr. Bannasch noted that Schimpf has an abnormal EEG and gustatory hallucinations. He stated that Schimpf has a history of significant head injuries, with frontal lobe dysfunction as evidenced by abnormal neuropsychological testing. Dr. Bannasch noted that Schimpf has difficulty initiating projects to be done and struggles with sequencing the steps to complete projects in a timely manner and that he has difficulty with immediate and

intermediate memory, which impairs his ability to interact socially and interact within a work situation.  Dr. Bannasch stated that Schimpf's memory is poor and that he will have trouble switching sets from one routine to another and back to the original routine, which is evidenced by his neuropsychological testing and poor working performance at his last job.  Dr. Bannasch opined that it will be difficult for Schimpf to interact in social situations with much stimulation, such as social events with numerous people, and a job situation where he will be required to interact with others and be able to respond appropriately to social cues.  R. 651.  Dr. Bannasch reiterated that Schimpf will be affected in circumstances where mental flexibility is required.  He explained that Schimpf will tend to avoid initiating interactions, may tend to perseverate in social circles, and invoke previously used patterns which may not be appropriate to the situation at hand.  R. 652.  With respect to Schimpf's seizures, Dr. Bannasch indicated that the seizures are not documented by an abnormal EEG but that Schimpf struggles with psychomotor seizures which are documented by history.  *Id.*  He noted that Schimpf has frontal lobe pathology, which occurs at the end of the montage in an EEG, making it difficult to detect.  Dr. Bannasch stated that Schimpf will have episodes of becoming unaware, lose track of time and what he is doing, and will "zone out" and become uncoordinated.  *Id.*  He opined that simple instructions will have to be repeated to him multiple times or he will tend to forget.  Dr. Bannasch also indicated that various head injuries Schimpf experienced further exacerbate his condition.  *Id.*

The ALJ gave Dr. Bannasch's opinions little weight.  R. 23.  After detailing Schimpf's treatment with Dr. Bannasch from 2016 through 2018, R. 20–23, the ALJ provided the following explanation for his decision to give the opinions little weight:

> His conclusions are unsupported by the records, including his own examination findings and treatment notes of as recently as two weeks prior to the preparation of this statement.  As discussed above, the claimant demonstrated no difficulty understanding, remembering and carrying out medical directives over his years of

9

> treatment. It is clear from the record that the claimant has ongoing issues adapting to the unfavorable resolution of his long-term employment. Further, the evidence demonstrates numerous situational stressors. However, the record when considered in its entirety, including repeated examination findings of Dr. Bannasch, does not support marked or extreme limitations in any functional area. He appears to rely primarily on the claimant's subjective complaints. There is no objective evidence that the claimant's epilepsy meets the listing criteria of 11.02 or 11.03.

R. 23.

As an initial matter, Schimpf argues that the ALJ failed to apply the factors enumerated in 20 C.F.R. § 404.1527(c). But the ALJ explicitly noted that he had considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527. The fact that the ALJ was aware of and considered these factors is implicit in his description of the doctor's history of treatment and progress notes. R. 20–23. An ALJ need not explicitly address every regulatory factor in evaluating a medical opinion. *Elder v. Astrue*, 529 F.3d 408, 415–16 (7th Cir. 2008); *see also Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018). In this case, the ALJ "sufficiently account[ed] for the factors" in his decision. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). That is all that is required.

Schimpf asserts that the record is consistent with and patently supports Dr. Bannasch's opinion. Schimpf essentially contends that the ALJ should have ruled in his favor because the evidence favors him. The Court's role is not to reinterpret the evidence, however, but merely to determine whether the ALJ's interpretation of the evidence was reasonable. *See Sanders*, 600 F. App'x at 470 ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record)."). The ALJ's decision was supported by substantial medical evidence, albeit evidence that conflicted with Dr. Bannasch's opinion. The ALJ conducted an extensive review of the record and adequately explained how Dr. Bannasch's

opinion was inconsistent with the medical evidence in the record, including his own treatment notes, and other evidence in the record.

Schimpf maintains and that the ALJ failed to discuss or acknowledge two letters Dr. Bannasch provided explaining the nature of Schimpf's frontal lobe dysfunction and how it related to Schimpf's limitations. Though an ALJ may not ignore "an entire line of evidence" that is contrary to his decision, he is also not required to address every piece of evidence in the file. *Terry*, 580 F.3d at 477. In the undated letters, Dr. Bannasch explained how Schimpf's frontal lobe syndrome, which was caused by a fall and previous injuries, restrict his ability to initiate projects and to follow through on his work. R. 400. He stated that Schimpf is unable to multitask or switch from one task or complicated motor program then go back to the previous motor program to complete the task and that inward and outward environmental stimuli will continue to disrupt his ability to consistently complete, at times, the simplest tasks. *Id.* In the second undated letter, Dr. Bannasch discussed whether Schimpf's work as a college professor could be modified to accommodate his needs. R. 403–04. He indicated that, with the combination of anticonvulsants and the anti-depressants, he is hopeful that Schimpf's ability to focus, organize, and follow through in a logical manner will be restored so he can function better. R. 403. Dr. Bannasch indicated that Schimpf's ability to plan ahead and make appropriate social and work decisions will be impaired and that he will show more impairment if the environment is physically or emotionally chaotic or stressful. He also found it difficult to predict if flare-ups in Schimpf's condition would occur, even with treatment and medication. R. 404. Schimpf contends that the letters "add valuable information on how frontal lobe dysfunction is expected to manifest in a patient's symptoms and how this, in turn, relates to Plaintiff's specific limitations." Pl.'s Br. at 20, Dkt. No. 10. Even though the ALJ did not explicitly cite to these letters, the letters reiterate the limitations set forth

in Dr. Bannasch's opinion that the ALJ did consider and evaluate. In other words, the two letters do not constitute an entire line of evidence that the ALJ ignored or that was inconsistent with his assessment; therefore, it was not reversible error for the ALJ to not explicitly address them.

Schimpf contends that, in rejecting Dr. Bannasch's opinion, the ALJ impermissibly relied on his lay judgment about the medical evidence. *Id.* at 24. "[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870. But the ALJ did not "play doctor" and substitute his judgment for Dr. Bannasch's. *See id.* (citing *Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir. 1996)). Instead, the ALJ referenced areas in the record where Schimpf's demonstrated abilities were inconsistent with Dr. Bannasch's extreme limitations. *See, e.g.*, R. 17 (noting the fact that Schimpf does not require any special reminders to take care of his personal needs or to take prescribed medication demonstrates his ability to remember and apply information); R. 18 (noting no indication in the record that Schimpf has any significant difficulty making and keeping medical appointments).

In addition, the ALJ's assessment of Dr. Bannasch's opinion was supported by other medical authorities, including a consultative psychological evaluation by Scott Trippe, Psy.D., and the state agency doctors and psychological consultants. Dr. Trippe completed a consultative examination in March 2017. During the consultative evaluation, Schimpf described his poor memory, issues with anxiety and depression, and his recent and, at the time, tentative diagnosis of epilepsy. R. 638–40. Dr. Trippe found that Schimpf had no significant memory deficits in psychological testing; met the diagnostic criteria for an adjustment disorder with depressed mood, based on his reaction to his loss of job and income; and did not meet the full diagnostic criteria for an anxiety disorder. Dr. Trippe concluded that Schimpf had no limitation in his ability to understand, remember, and apply information; assessed mild-to-moderate limitations in Schimpf's

12

ability to interact with others and maintain concentration, persistence, and pace; and opined that Schimpf had a moderate limitation in his ability to adapt and manage himself in a work setting. The ALJ gave significant weight to Dr. Trippe's opinions, finding that they were substantially consistent with the evidence when considered in its entirety. R. 22. Schimpf asserts that Dr. Trippe lacks Dr. Bannasch's extensive treatment history and the longitudinal perspective that goes with it, as well as Dr. Bannasch's specialty in neuropsychiatry. Although Dr. Bannasch's treatment relationship with Schimpf and specialty are two factors that could weigh in favor of giving his opinion more weight than Dr. Trippe's, it was not unreasonable for the ALJ to afford more weight to Dr. Trippe's opinion because he found that it was more consistent with the overall record.

The ALJ also relied on the opinions of the state agency consultants. Schimpf asserts that the ALJ erred in giving substantial weight to the opinions of the state agency consultants because they did not have access to a substantial portion of the record developed after April 2017, including the opinion and narrative reports of Dr. Bannasch. Pl.'s Br. at 23. It is error for an ALJ to "rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny)); *see also Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) (holding ALJ erred in crediting the state-agency opinions, which were outdated and missing approximately 70 pages of medical records, including MRI results). The mere fact

that a claimant undergoes further treatment after an evaluation does not render an evaluation worthless, however.

With respect to the state agency medical consultants, the ALJ noted that Dr. Mina Khorshidi and Dr. George Walcott reviewed the evidence independently in September 2016 and January 2017, respectively, and assessed epilepsy as a severe impairment precluding Schimpf from exposure to hazards but otherwise imposing no other limitations. The ALJ gave their opinions significant weight, finding that they are substantially consistent with the evidence. Although the ALJ found that the record does not support exertional limitations and the ALJ did not assess any exertional limitations in the RFC determination, the ALJ concurred with the state agency medical consultants' assessments that symptoms/episodes relative to epilepsy limit Schimpf's ability to be exposed to hazards. R. 23.

As to the state agency psychological consultants, the ALJ noted that Soumya Palreddy and Dr. Russell Phillips reviewed the evidence independently in September 2016 and April 2017, respectively. *Id.* Each assessed an organic mental disorder and an affective disorder as severe impairments and found no limitation in the area of social functioning/interaction and moderate difficulties in the area of maintaining concentration, persistence, and pace. R. 23–24. Dr. Phillips considered the evidence under the revised "paragraph B" domains, assessed mild difficulties with Schimpf's ability to understand, remember, and apply information, and opined no difficulties in the area of adapting or managing self. The ALJ gave the opinions of these consultants significant weight. He explained, however, that the evidence when considered in its entirety supported a finding of mild difficulties in the area of social functioning and that Dr. Phillips' opinion that Schimpf has no difficulties adapting/managing himself was not supported by the evidence. The ALJ concluded that Schimpf had moderate difficulties in that functional area. R. 28.

The ALJ explained why, despite the fact that these opinions were offered prior to the hearing and the additional treatment Schimpf received, they were entitled to "significant weight." He explained that the opinions were consistent with the medical record he reviewed and noted when the state agency consultants' opinions were not consistent with the record. R. 23–24. In short, the ALJ did not err in relying on the state agency consultants' opinions.

Schimpf also argues that the ALJ should have further developed the record, including obtaining clarifications from Dr. Bannasch or arranging a consultative examination from another neuropsychologist. But that was not required here. "An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). If the evidence is adequate for the ALJ to make such a determination, it is "within his discretion in deciding not to call a medical expert." *Id*. The ALJ found sufficient evidence in the medical record to determine that Schimpf was not disabled, and therefore it was within his discretion not to seek additional evidence of Schimpf's abilities or limitations.

The ALJ provided sensible grounds for giving little weight to Dr. Bannasch's opinion and provided an "accurate and logical bridge" between the evidence and his conclusions. *Roddy*, 705 F.3d at 636. The ALJ's evaluation of the medical evidence was not unreasonable and remand is not warranted on this basis.

**B. Schimpf's Work History and Credibility**

In acknowledging that "courts are generally reluctant to overrule the 'credibility' findings of an ALJ," Schimpf raises only one argument to the ALJ's credibility assessment. Pl.'s Br. at 25. He argues that the ALJ erred when he failed to address Schimpf's "stellar work history" as part of his credibility finding. *Id.* at 25–26. Because he spent many years as a professor prior to becoming

15

Case 1:19-cv-01825-WCG   Filed 03/26/21   Page 15 of 16   Document 19

disabled, Schimpf argues, it would be unlikely that he would trade in such a lucrative career for disability benefits, a fact that lends credibility to his application. *Id*. at 26. Although a good work history bolsters a claimant's credibility when claiming a disability, "work history is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). As the Seventh Circuit has recognized, an ALJ does not "commit reversible error by failing to explicitly discuss [the claimant's] work history when evaluating her credibility." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *see also Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) ("An ALJ is not statutorily required to consider a claimant's work history.").

Even though Schimpf's work history may have demonstrated his willingness to work, the ALJ's finding that his "allegations of mental symptoms and limitations are not entirely consistent with the evidence of record" was supported by substantial evidence. R. 17. The ALJ explained that evidence from Schimpf's September 2016 Function Report, the medical record, his testimony at and participation in the hearing, and the consultative psychological examination were inconsistent with Schimpf's claims of disabling mental impairment. *Id*. Because Schimpf has not shown that the ALJ's reasoning was patently wrong or his decision was lacking in evidentiary support, the credibility determination will stand. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 26th day of March, 2021.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge